1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                       SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   TURAYL P. A., | Case No.:  3:23-cv-1589-WQH-DTF |
| 12                            Plaintiff, | **REPORT AND** |
| 13   v. | **RECOMMENDATION REGARDING** |
| | **JOINT MOTION FOR JUDICIAL** |
| 14   MARTIN O'MALLEY, Commissioner of | **REVIEW** |
| 15   Social Security, | |
| 16                            Defendant. | **[ECF No. 13]** |
| 17 | |

18

19        On August 23, 2023, Plaintiff Turayl P.A.[1] commenced this action against

20  Defendant Kilolo Kijakazi[2], Acting Commissioner of Social Security, for judicial review

21  under 42 U.S.C. 42 U.S.C. § 405(g) of the finding that Plaintiff was not disabled under

22  the Social Security Act for Social Security Disability Insurance ("SSDI"). (ECF No. 1.)

23  Defendant filed the Administrative Record on October 27, 2023.  (ECF No. 7.)  On

24

25  _____

26  [1] The Court refers to Plaintiff using only his first name and last initial pursuant to the

27  Court's Civil Local Rules.  *See* S.D. Cal. Civ. R. 7.1(e)(6)(b).
    [2] Martin O'Malley is now the Commissioner of Social Security and is automatically

28  substituted as a party pursuant to Fed.R.Civ.P. 25(d).

                                            1

February 23, 2023, the parties filed a Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security.  (ECF No. 13.)

This Report and Recommendation is submitted to United States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c).  For the following reasons, the Court recommends that the final decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

## I.    BACKGROUND

**A.    <u>Factual and Procedural History</u>**

Plaintiff, born in 1984, has a high school education and previously held employment as an administrative clerk and a flight operations specialist.  (AR 28-29). [3] Plaintiff also served in the United States Navy from August 2003 to March 2011.  (AR 195.)  He was awarded benefits by the Department of Veteran Affairs (VA) at a "100% rate effective February 25, 2019" finding Plaintiff was unable to work due to his service-connected disabilities.  (AR 189.)

On November 10, 2020, Plaintiff filed an application for disability insurance benefits under the Social Security Act.  (AR 19.)  In that application, he alleged that he had been disabled since August 28, 2019, due to post traumatic stress disorder ("PTSD"), depression, anxiety, insomnia, and arthritis causing lower back and knee pain.  (AR 249.)

 The claims were denied in January of 2021, and again in August of 2021 after reconsideration.  (AR 19.)  An administrative hearing was conducted on February 16, 2022 before Administrative Law Judge ("ALJ") Kevin W. Messer.  (*Id.*)  On September

---

[3] "AR" refers to the Administrative Record filed on October 27, 2023. (ECF No. 7.)  The Court's citations to the AR use the page references in the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF").  For all other documents, the Court's citations are to the page numbers affixed by CM/ECF,

19, 2022, the ALJ issued a decision and concluded that Plaintiff was not disabled from August 28, 2019 through December 31, 2020, the last date insured. (AR 19-30.) Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on June 30, 2023 adopting the ALJ's decision as final. He then commenced this action pursuant to 42 U.S.C. § 405(g).

B. **ALJ's Decision**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of August 28, 2019 through his last date insured of December 31, 2020. (AR 21.)

At step two, the ALJ found that Plaintiff's severe impairments included lumbosacral strain, post-traumatic patellofemoral pain syndrome, and mild bilateral lower extremity radiculopathy. (AR 22.) He concluded that Plaintiff's other claimed impairments, including tinnitus, insomnia, anxiety, and PTSD, were not severe. (*Id.*) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 23.)

The ALJ found that Plaintiff had the following residual functional capacity (RFC):

[L]ight work as defined in [20 C.F.R. § 404.1567(b)] except the claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to hazards such as operational control of moving machinery and unprotected heights. The claimant is limited to the occasional operation of a motor vehicle.

(AR 24.)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (AR 28.) Nevertheless, the ALJ found, based on testimony from a

3

vocational expert, that Plaintiff was capable of performing the requirements of the representative light and semiskilled occupations of office helper, price marker, and burrito maker (step five). (AR 29.)  Accordingly, the ALJ concluded that Plaintiff had not been under a disability from August 28, 2019 through December 31, 2020.  (AR 30.)

**C.   Disputed Issues**

The parties have briefed five  issues in their joint motion which Plaintiff asserts are grounds for reversal: (1) the ALJ opinion failed to properly consider the VA disability rating or give proper reasons to disagree; (2) the ALJ failed to properly analyze Plaintiff's subjective symptom testimony; (3) the ALJ improperly used activities of daily living to attack Plaintiff's credibility in the subjective symptom analysis; (4) the ALJ misstated facts and erred in finding Plaintiff's tinnitus non-severe; and (5) the ALJ opinion is unsupportable due to misstatement of facts regarding the mental impairment evidence from SSA, as well as the cherry-picking and omission of contrary evidence.  (Jot. Mot. at 9.)

## I.   LEGAL STANDARDS

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'" *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. ----, ----, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court

must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id.*

## III.   DISCUSSION

### A.   <u>Consideration of VA Disability Rating</u>

Plaintiff's first argument is that the ALJ erred by declining to consider Plaintiff's VA disability rating. (Joint Mot., ECF No 13 at 10-18.)  Specifically, Plaintiff contends that the ALJ erred by failing to provide any explanation of the "persuasive, specific, valid reasons" required if the "SSA wishes to differ with the VA rating." (*Id.* at 11.)  In his opinion, the ALJ wrote:

> "[Plaintiff] has a 100% disability rating from the Department of Veterans Affairs. Here, regarding claims filed on or after March 27, 2017, the undersigned did not provide any written analysis about how we consider statements on issues reserved to the Commissioner, because they are neither inherently valuable nor persuasive." (AR 28.)

Plaintiff argues that while regulations that took effect in 2017 may have changed the amount of weight a VA rating should be accorded, they did not change that the "VA rating must be accorded respect because of the marked similarities  of the two disability determination processes" and if the "SSA wanted to disagree with the VA, it must provide "persuasive, specific, valid reasons for doing so." (ECF No. 13 at 11 citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).)  Defendant argues, however, that Plaintiff's argument relies on outdated caselaw that has been superseded by revised regulations.  The Court agrees with Defendant.

First, the revised regulations at issue in this matter are applicable to disability claims that arise on or after March 27, 2017 and direct that ALJ's "will not provide any analysis in [their] determination or decision about a decision made by" other governmental agencies, "such as the [VA]." 20 C.F.R. § 404.1504.  The regulations clarify that agencies, such as the VA, make "disability … and other benefits decisions for [its] own programs using [its] own rules," and they are therefore not "binding" on the SSA.  *Id.*  Plaintiff's claims arise after March 27, 2017 and therefore, these new regulations apply.

Second, the Ninth Circuit recently held that *McCartey* "is no longer good law for claims filed after March 27, 2017" and is "clearly irreconcilable with the revised regulations." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023); *see also Gerald C. v. O'Malley*, No. 3:23-cv-00018-JLB, 2024 WL 1298009, at *3 (S.D. Cal. Mar. 26, 2024) (Relying on *Kitchen's* holding finding that the ALJ did not err by discounting Plaintiff's VA disability rating based on the new regulations).  "Put simply, the 2017 regulations removed any requirement for an ALJ to discuss another agency's rating." *Kitchen*, 82 F.4th at 739.

Accordingly, under the new regulations and *Kitchen*, it was not error for the ALJ to exclude Plaintiff's VA disability rating from their analysis.

**B.   Evaluation of Subjective Symptom Testimony**

Plaintiff's second contention is that the ALJ failed to offer specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  (Joint Mot., ECF No. 13 at 18-24, 27-31.)  He contends that the ALJ only summarized the medical evidence in the record and failed to specify the evidence that undermine Plaintiff's testimony.  (*See id.*)  The Court agrees.

**1.   Plaintiff's symptom testimony**

At the administrative hearing, Plaintiff testified that he is unable to work due to "how bad my … back issue is" and he is "always" in pain which results in difficulty sleeping, sitting, and standing.  (AR 45.)  He explained that he takes prescription

medication through the VA because the pain is "constant" and is at a level "eight or nine." (AR 46.)  While Plaintiff was prescribed physical therapy for his back pain, he received therapy through the VA through a program called the Choice Program which was discontinued in 2016. (*Id.*)  Plaintiff testified he is unable to walk his dog for long walks because he is unable to stand for long periods of time.  (AR 57.)   Plaintiff also testified that he has tinnitus, as well as arthritis in his knees.  (AR 48-49.)

Plaintiff further testified that he was diagnosed with depression, anxiety, insomnia, and adjustment disorder by the VA and told that they were all symptoms of PTSD.  (AR 50.)  Plaintiff stated that he is unable to work because he "get[s] really scared out in public," and speaking to people causes him to break out in a sweat.  (AR 50.)  At his hearing he told the ALJ that he was having "an issue trying to form my words and speak clearly." (*Id.*)  When he is "forced" to speak with people, he starts to sweat and his "voice starts to tremble."  (AR 51.)  Plaintiff also testified that when he is given instructions at a job he has trouble focusing and loses his "train of thought really, really quick." (*Id.*)  Plaintiff was prescribed medication but they "weren't strong enough" and his current physician, Dr. Chen, is "upping his dosage" for gabapentin and "all these other new medications." (*Id.*)  Plaintiff informed the ALJ that he was seeing a mental health care provider regularly for mental health treatment.  (*Id.*)

Plaintiff testified that he informed Dr. Chen that the medication was not helping with his mood, anxiety, or panic attacks so she changed his medication and increased the dosages.  (AR 52.)  Plaintiff also testified that he takes the Mirtazapine and Effexor for depression, and Hydroxyzine for sleep.  (AR 53.)  He also testified that due being in the military "in the war zones and fire alarms and collision alarms going off," loud noises "freaks [him] out."  (AR 61.)

## 2. Applicable standards

It is up to the ALJ "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)).  An

ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited. First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison*, 759 F.3d at 1014; *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § Smar404.1529(b). Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c). When the ALJ finds that a claimant is not malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15; *see also Lambert*, 980 F.3d at 1277; *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1102).

### 3.     ALJ failed to specifically identify the testimony he found not to be credible and explain his rationale

The ALJ determined that Plaintiff satisfied step one of the two-step analysis. (AR 25.) At the second step, the ALJ stated that the "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record for the reasons explained in this decision." (*Id.*)  This language, which is routinely included in ALJ decisions denying benefits, is insufficient in and of itself to meet the requirements set forth in Ninth Circuit authority to reject a plaintiff's pain testimony because it does not "identify what parts of the claimant's testimony were not credible and why." *See Lambert*, 980 F.3d at 1277; *Treichler*, 775 F.3d at 1103. After making this boilerplate statement, ALJs typically identify the parts of the claimant's testimony that

8

were not credible and explain the reasons for their finding. *Treichler*, 775 F.3d at 1103. Here, the ALJ offered the following paragraphs summarizing the medical and treatment evidence in the record:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are not entirely consistent with the record. Regarding the impairments, the record shows that on November 24, 2018, the claimant presented with complaints of worsening low back pain. A CP&P examination showed a decreased lumbar motion and lumbar tenderness. However, he had a full muscle strength, normal reflexes, intact sensation and negative straight leg raise test. In addition, he was not using an assistive device to ambulate. [Exhibits 2F/18-19, 21-23 (AR 414-415, 417-419)].

> On April 9, 2019, during follow-up, he reported improvement of his back pain with medication adjustments. He was advised to keep up with his home exercise programs to maintain flexibility. In addition, a physical examination showed a normal lumbar motion, no stiffness or tenderness, full muscle strength and neurological deficits. [Exhibits 2F/99 (AR 295), 1F/20 (AR 300)].

> On June 25, 2019, he complained of right knee pain. During this visit, a CP&P examination showed a normal knee motion and no pain with weightbearing, full muscle strength and no ankylosis or subluxation, normal sensation and intact reflexes. Additionally, a bilateral knee x-ray was normal and unremarkable. [Exhibits 2F/85, 111 (AR 481, 507), 2F/10-14, 22 (AR 406-410, 418)].

> On July 20, 2021, the claimant went for an orthopedic evaluation with Julian Tran, M.D., where he complained of chronic back pain. Dr. Tran reported that the claimant had a normal gait pattern and did not ambulate with an assistive device. In addition, the claimant was able to toe, heel and tandem walk without any problems. He gave a good effort and did not display any painful behaviors. He had pain with lumbar motion, lumbar right knee tenderness, hyperreflexia in the bilateral ankles and positive Lasegue test on the right lower extremity. However, he had a negative Romberg, straight leg raise, McMurray and Lachman tests, full joint motion, no joint deformity, swelling or enlargement, no clonus, intact reflexes and full muscle strength. He reported that as part of his daily activities, he was able to engage in self-care, prepare meals, wash dishes, do laundry, watch television, garden,

1

2

drive and shop for groceries.  [Exhibits 4F/2-3, 5-6 (AR 463-64, 466-67),

3

Here, the record shows an occasional decreased lumbar motion, lumbar and right knee tenderness, positive Lasegue test and ankle hyperreflexia. However, overall physical exams show a full muscle strength, negative Romberg, straight leg raise, McMurray and Lachman tests, full joint and lumbar motion, no joint deformity, swelling or enlargement, intact reflexes, normal sensation and full muscle strength. In addition, the claimant has a normal gait and ambulates without an assistive device. His back pain also improved with medication and contrary to disabling allegations, he receives advice to exercise. He is also able to engage in robust activities of daily living. For instance, he is able to engage in self-care, prepare meals, wash dishes, do laundry, watch television, care for his dog, garden, drive, use the computer, manage finances and shop for groceries. Thus, based on the record, the undersigned finds the claimant can perform light work with postural and environmental limitations to account for deficits from these impairments. [Exhibits 2F/10-14,19, 22-24, 99-100 (AR 406-410, 415, 418-420, 495-496), 4F/2, 4-6 (AR 562, 565-67), 1F/20 (AR 300); 5E/2-5 (AR 243-246)].

4

5

6

7

8

9

10

11

12

13

14

(AR 25-26.)

15

16

In other words, rather than specifically identifying the testimony from Plaintiff that he found to not be credible and explaining his rationale, the ALJ simply summarized Plaintiff's testimony and the medical record exhibits he relied upon. This is insufficient. "[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  Put simply, the ALJ must identify which specific testimony he found not to be credible or credible but he did not do so. "Because the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based, the agency must explain its reasoning." *Treichler*, 775 F.3d at 1102 (internal citation and quotations omitted). The Court should not have to speculate as to the grounds for the ALJ's determinations. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). The ALJ's decision here does not set forth any specific reasons or explanation as to why he rejected Plaintiff's symptom

17

18

19

20

21

22

23

24

25

26

27

28

testimony. As in *Lambert*, the Court therefore "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Plaintiff's] pain testimony [because] . . . the ALJ never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony." *See Lambert*, 980 F.3d at 1277 (citing *Brown-Hunter*, 806 F.3d at 494 (9th Cir. 2015)).

Ninth Circuit precedent clearly required the ALJ to do more than was done here. *See Lambert*, 980 F.3d at 1277. The ALJ thus committed legal error by failing to specifically identify which part of Plaintiff's testimony about the severity of his symptoms he found not credible and link that testimony to evidence that contradicted the testimony.[4]

## C.  Evaluation of Subjective Symptom Testimony regarding Activities of Daily Living

Plaintiff's third contention is that the ALJ erroneously relied on his activities of daily living as a basis for discrediting his subjective symptom analysis.  (Joint Mot.at 31-34, 36-37.)  Specifically, he maintains that the ALJ failed to follow Ninth Circuit law on the use of activities of daily living in both the step two and step five analysis.  (*Id.* at 33.)  The Court agrees.

### 1.   ALJ's summary of Plaintiff's testimony and credibility finding

In step five, the ALJ finds that Plaintiff testified at his hearing that he is "able to prepare simple meals, do laundry, clean his room and care for his dog."  (AR 25.)  When

---

[4] Defendant argues that Plaintiff did not challenge the ALJ's findings that his mental impairments were not severe and therefore "he has forfeited the issue for judicial review."  (Jt. Mot. at 24, n. 2. citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009)).  This argument is without merit.  The Court's Scheduling Order explicitly directs the Plaintiff shall either "(a) specify the respects in which Plaintiff contends the ALJ's decision misstates, mischaracterizes, or omits any of the material medical evidence and/or testimony of record, or (b) state that the contentions of misstatement, mischaracterization, or omission are addressed in the argument in support of the Joint Motion for Judicial Review."  (Scheduling Order, ECF No. 8 at 4.)  Plaintiff clearly challenged the ALJ's finding that his medical impairments were non-severe in a section in the Joint Motion entitled "Plaintiff's Contentions Regarding Medical Evidence."  (*See* Jt. Mot. at 3-8.)

discussing the medical opinion of Dr. Tran, the ALJ adds additional summary of Plaintiff's testimony as also including his purported ability to perform self-care, wash dishes, watch television, garden, drive, and shop for groceries. (AR 26.) In discussing the medical opinions of Dr. Geraldine Kuo, Dr. H. Amado, Dr. Willibee, and Dr. Michael, the ALJ repeatedly states that Plaintiff is "also able to engage in robust activities of daily living." (AR 26-27.) The ALJ found that Plaintiff "has the above residual functional capacity assessment, which is supported by the medical record and the claimant's self-reported activities of daily living." (AR 28.)

### 2.    Applicable Standards

An "ALJ [is] permitted to consider daily living activities in his credibility analysis." *Burch*, 400 F.3d at 681. Daily activities may "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)) Neither of these bases is supported by the ALJ's decision.

### 3.    ALJ failed to specifically identify how Plaintiff's daily activities contradicted his testimony

Defendant makes clear that the ALJ's decision was based on the first factor found in *Orn.* (Jot. Mot. at 35.) Specifically, Defendant argues that the "ALJ reasonably cited Plaintiff's contradictory daily activities to reject his symptom allegations." (*Id.* at 35 citing AR 26) However, the Court disagrees and finds that the ALJ erred by failing to specifically identify any part of Plaintiff's testimony that he determined was not credible as it relates to his daily activities, which has prevented the Court from conducting a meaningful judicial review. *See Parra v. Astrue*, 481 F.3d a742, 750 (9th Cir. 2007) ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."); *Reddick v. Chater*, 157 F.3d 715, 722-22 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what

testimony is not credible and what evidence undermines the claimant's complaints.");
*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ( [a]n ALJ "must state specifically
which symptom testimony is not credible and what facts in the record lead to that
conclusion.").

"[E]ngaging in daily activities that are incompatible with the severity of symptoms
alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d
1154, 1165 (9th Cir. 2014) (citing *Orn*, 495 F.3d at 639; *Batson*, 359 F.3d at 1196).
Here, the ALJ does state repeatedly that Plaintiff is able to "engage in robust activities of
daily living" but the opinion lacks any mention of Plaintiff's specific testimony regarding
his impairments that were contradicted by his daily activities.  Moreover, the ALJ fails to
identify the specific subjective symptom testimony that these activities undermine or
explain how the ability to perform these activities contradict Plaintiff's specific
testimony.  *See Roberts v. Saul*, 829 Fed.Appx. 757, 760 (9th Cir. 2020).  The ALJ
cannot expect the court to "comb through the administrative record to find specific
conflicts."  *Brown-Hunter*, 806 F.3d at 494.

In sum, for the foregoing reasons, the ALJ committed legal error by failing to
provide specific, clear, and convincing reasons to reject the Plaintiff's testimony based on
his daily activities.

**D.    ALJ's Opinion finding Plaintiff's Tinnitus  and Mental Impairment non-severe**

**1. Applicable standards**

At the second step, the ALJ must determine whether the claimant has "a severe
medically determinable physical or mental impairment that meets the duration
requirement in § 404.1509, or a combination of impairments that is severe and meets the
duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). The inquiry at Step Two is a de
minimis screening "to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *see also*
*Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005).  A claimant is required to make
a "threshold showing" that (1) he has a medically determinable impairment or

combination of impairments and (2) the impairment or combination of impairments is severe. See 20 C.F.R. § 404.1520(c), 416.920(c).  An ALJ's decision that a claimant does not have a severe impairment can only be affirmed when the determination is "clearly established by medical evidence." *Webb*, 433 F.3d at 687.

**2.      The ALJ's finding Plaintiff's tinnitus is non-severe is not supported by substantial evidence**

The ALJ found that Plaintiff had the "non-severe impairment[] of tinnitus."  (AR 22.) Plaintiff contends that the ALJ's finding that his tinnitus as non-severe was supported only by a "badly misleading misstatement of the medical evidence."  (Jot. Mot. at 38.)  In response, Defendant maintains that Plaintiff failed to demonstrate his tinnitus was a "severe" impairment as defined in the regulations.  (*Id.*)

In finding Plaintiff's tinnitus non-severe, the ALJ determined that Plaintiff's "tinnitus is stable with treatment."  (AR 22 citing to AR 495.)  Here, the ALJ relied on one medical record to support  his determination that Plaintiff's diagnosis of tinnitus was non-severe.  However, he misrepresented the contents of this medical record.  The ALJ found that the "record shows that the tinnitus is stable *with treatment*."  (AR 22.) (emphasis added.)   The ALJ's erroneous finding rests on the content of Exhibit 2F/99, (AR 495), which actually states that Plaintiff's tinnitus is "stable at *baseline*." (emphasis added.) In a medical context, "stable" would indicate that the condition is "not changing or fluctuating[5]" at a given point in time. There is no mention of Plaintiff being on any treatment for his tinnitus.  In other words, the record shows that Plaintiff did have tinnitus, and while it was not any better or any worse at that one moment in time, the record does not provide any evidence as to the severity of the condition itself.

Defendant attempts to counter this argument by stating "the ALJ pointed out, a clinician reported that Plaintiff's tinnitus was 'stable.'" (Jot. Mot. at 38.)  However, the

---

[5] *See* https://www.merriam-webster.com/dictionary/stable (website last visited June 14, 2024.)

14

ALJ did not merely say the condition was "stable," he added language, unsupported by the record, that it was stable "with treatment."  *See Reddick*, 157 F.3d at 722-23  (stating that it is error for an ALJ to paraphrase medical evidence in a manner that is "not entirely accurate regarding the content or tone of the record.")  The record is also replete with Plaintiff listing tinnitus as a problem in his medical examinations on multiple occasions. (*See e.g.,* AR 400, 402-3, 436, 444, 448, 453, 465, 468, 475, 491, 495, 497, 504, 524, 529-30, 533, 536, 540, 543, 572, 582, 586, 593, 599, 605, 611, 617, 619, 623, 629.) Therefore, the ALJ's erroneous reliance on a finding there was a treatment for Plaintiff's tinnitus that was not found in the record is clear error and does not constitute "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion that Plaintiff's tinnitus was non-severe.  *Sandgathe,* 108 F.3d at 980. Moreover, the Court finds that the error was not harmless as the ALJ did not consider how this impairment affected Plaintiff's ability to perform basic work or incorporate that consideration into the RFC determination.  *See Smolen*, 80 F.3d at 1290-92.

### 3.    The ALJ's finding Plaintiff's mental impairments are non-severe is not supported by substantial evidence

The ALJ found that Plaintiff's mental impairments of "anxiety and post-traumatic stress disorder, considered singly and in combination, did not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and were therefore non-severe."  (AR 22.)

Plaintiff argues, however, that the ALJ misstated the evidence, impermissibly cherry-picked evidence, and omitted evidence that was contrary to the ultimate finding of the ALJ opinion.  (Jot. Mot. at 41.)  Defendant responds that Plaintiff "offers no specific argument, nor does he cite to any part of the transcript to support his assertion," and therefore, the Court "need not address this argument."  (*Id.* citing *Carmickle v. Commissioner of Social Sec. Admin,* 533 F.3d 1155, 1161 n2 (9th Cir. 2008) ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing.").  As set forth above, the Court finds that that Defendants argument that the

1   Plaintiff did not challenge the ALJ's finding that his mental impairments were non severe

2   is without merit as Plaintiff clearly did offer specific arguments with regard to this issue

3   in the Joint Motion.  *See* Jt. Mot. at 3-8.

4        An ALJ's determination that a claimant's mental impairments are non-severe is

5   supported by substantial evidence only if the ALJ properly considered the claimant's

6   mental health records when assessing the claimant's mental functioning under the

7   "paragraph B" criteria. *See Woods v. Kijakazi*, 32 F.4th 785, 793 (9th Cir. 2022) (citing

8   20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00.A.2.b.). In evaluating the severity of a mental

9   impairment, an ALJ must use the "paragraph B" criteria from Section 12.00E of the

10  Appendix 1 listing of impairments. 20 C.F.R. §§ 404.1520a(c)(2)-(3), 416.920a(c)(2)-(3).

11  Accordingly, an ALJ will use the paragraph B "four broad functional areas" and "rate the

12  degree of [the claimant's] functional limitation ... " to "[1] [u]nderstand, remember, or

13  apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and

14  [4] adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ

15  must rate the claimant's limitations in each of these categories as none, mild, moderate,

16  marked or extreme, and if the claimant has mild or no impairments in all four categories,

17  the impairment is non-severe.  *Id.*

18       The ALJ concluded in his decision that Plaintiff's anxiety and PTSD were non-

19  severe impairments and made this finding after considering the "paragraph B" criteria.

20  (AR 22.)  The ALJ found that Plaintiff "has no limitation in understanding, remembering

21  or applying information; interacting with others; concentrating, persisting or maintaining

22  pace; and adapting or managing oneself."  (*Id.*)   However, the Court agrees with Plaintiff

23  that the ALJ selectively chose certain evidence, as well as omitting other evidence, to

24  support his decision to find that Plaintiff's mental impairments were not severe.

25       First, the ALJ's statement that Plaintiff "reported that his mental symptoms were

26  well-controlled with medication from his primary physician" is a misrepresentation of the

27  record.  (AR 22 citing 2F/72 (AR 468); 6F11, 15 (AR 723, 727).) The first Exhibit

28  referenced is Plaintiff's visit with his primary care physician, however the record shows

that Plaintiff self-reported on one occasion that he was "doing 'ok' managing mood and anxiety" but does not indicate what medication he was currently using.  (AR 468.) Instead, he references only past medications that "failed" either due to negative side effects or ineffectiveness.  *Id.*  There is nothing in this record to indicate that his mental health symptoms were "well controlled" with medication.  Moreover, the fact that Plaintiff reported he was doing "okay" on one occasion alone does not support a finding that his mental impairments were non-severe.  *See Garrison*, 759 F.3d at 1017 (Mental health issues "wax and wane in the course of treatment" and it is error for an ALJ to pick a few isolated instances of improvement and conclude a claimant is capable of working.") The second Exhibit referenced by the ALJ is not a treatment record of an examination with his "primary care physician" but instead it is an examination with the SSA Consultative Examiner (CE), Robert E. Willibee III, Psy.D.  (AR 723, 727.)  There is no statement in this Exhibit indicating that Plaintiff's symptoms were "well controlled" with medication but rather it is noted that Plaintiff "did not bring in [his] medication" and he "had some difficulty remembering the medication and dosages that were prescribed." (AR 723.)  The CE psychologist does state that Plaintiff's depression, anxiety, and PTSD are "well controlled" but this is not a finding by his primary care physician as described by the ALJ in his opinion.  (AR 727.)  Moreover, this statement is conclusory and fails to provide any discussion as to the basis that forms the opinion that Plaintiff's symptoms are "well-controlled."

Second, the ALJ found that "during the relevant period, the record does not show the claimant received mental health treatment."  (AR 22.)  This opinion is also not supported by the record.  Although the ALJ need not discuss every piece of evidence in the record, they cannot ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).

Here, the Court finds that the ALJ's discussion largely omits Plaintiff's mental health treatment which is evidenced by documentation of prescription medication for his mental health disorders.  In fact, the ALJ cited to the CE performed by Dr. Willibee, who

performed the exam in 2022, and claimed that "VA records were reviewed" and "[n]o psychiatric medications were listed on the medical records reviewed." (AR 723-24.) Throughout his VA medical records he indicates that he was diagnosed with depression and anxiety. The VA medical records also show multiple medications he was prescribed for his mental health impairments over the years. He was initially prescribed elavil in 2019, a medication used to treat depression[6] and this prescription was continued into 2020. (AR 343, 371, 468.) At the same time, there is evidence he had been given a different prescription for depression in this same timeframe, setraline[7], which was discontinued due to "poor tolerance" of the side effects. (AR 343, 468.) In early 2019, Plaintiff had been prescribed fluoxetine[8] which is used to treat, among other disorders, depression, and panic disorder. (AR 382.) The evidence in the record clearly contradicts Dr. Willibee's findings that Plaintiff was not prescribed any psychiatric medications. An ALJ must consider all relevant evidence in the record and not rely solely on only those portions that support his findings. In Plaintiff's medical records with his treating physicians during the relevant time period, there are multiple references to anxiety and depression. This shows a selective consideration of evidence when the ALJ found no evidence of mental health treatment which is engaging in impermissible cherry-picking of the record. *See Garrison,* 759 F.3d at 1018 n 23.

The ALJ also relied on the mental impairment analysis in the CE report of Dr. Willibee which it finds to be persuasive. (AR 27.) Specifically, the ALJ finds that the CE report shows "mental exams during medical visits are unremarkable." (*Id.* citing to

---

[6] *See* https://www.webmd.com/drugs/2/drug-1807/elavil-oral/details (website last visited June 14, 2024.)

[7] *See* https://www.ncbi.nlm.nih.gov/books/NBK547689/#:~:text=Sertraline%20is%20an%20antidepressant%20medication,in%20an%20accumulation%20of%20serotonin. (website last visited June 14, 2024.)

[8] *See* https://www.mayoclinic.org/drugs-supplements/fluoxetine-oral-route/description/drg-20063952#:~:text=Descriptions,PMDD)%2C%20and%20panic%20disorder. (website last visited June 14, 2024.)

Exhibit 2F/100, 109 (AR 496, 505), 6F/15 (AR 727).  The first exhibit is two pages of a multipage record for an examination Plaintiff had on April 9, 2019.  (AR 496, 505.) These two pages reference a medical condition unrelated to the issues in this matter. However, what is not included is the rest of the medical record for that visit which are the notes that  Plaintiff has issues with "[d]epression/[a]nxiety/[i]nsomnia."  (AR 495.) Plaintiff is also reported as stating that he "admits depressive mood [with] anxiety" for which he was prescribed elavil.  (*Id.*)  In that same visit, it was noted Plaintiff was diagnosed with depression, insomnia, anxiety disorder, and "depressive" disorder.  (AR 497.)  The ALJ excluded portions of the record from that visit which is a mischaracterization of the record.  *See Reddick*, 157 F.3d at 722-23.

Plaintiff also argues that it was error for the ALJ to completely disregard and fail to discuss the "serious mental impairment medications" he has been on, as well as the treatment notes of his current treating physician, Dr. Chen.  (Jot. Mot. at 7.)  The ALJ acknowledges that Plaintiff "started seeing Stephan[ie] Chen, M.D, his psychiatrist, from October 2021," but gives no weight to the medical file or treatment notes of Dr. Chen. (AR 22.)  In October of 2021, Plaintiff was seen by Dr. Chen who noted in his record that he had a diagnosis of PTSD, depression, and anxiety.  (AR. 626.)  During this visit she prescribed effexor[9] for anxiety and depression.  In February of 2022, Plaintiff was seen by Dr. Chen who noted that he had a "long [history] of PTSD symptoms starting from multiple instances of combat trauma in deployment."  (AR 588.)

The ALJ gives no weight to the mental health records or treatment received from Dr. Chen but suggests instead that because he received this treatment outside the date last insured of December 31, 2020 they are not relevant.  (AR 22.)  The documentation in Dr. Chen's records indicate that as to Plaintiff's PTSD, this condition began well before December 31, 2020, and she was treating it as an ongoing condition.  (AR 583-633.)  The

---

[9] *See* https://www.webmd.com/drugs/2/drug-1836/effexor-oral/details.  (website last visited June 14, 2024.)

3:23-cv-01589-WQH-DTF

record before the ALJ is replete with references to Plaintiff's depression and anxiety during the time period he was insured. As Plaintiff notes, the ALJ relies "heavily on the mental impairment analysis" of Dr. Willibee who examined Plaintiff on one occasion in 2022 (AR 22), but ignores the entirety of Dr. Chen's treatment notes even though she began seeing Plaintiff in 2021. The Ninth Circuit has held that "[i]f the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and obtain all evidence which is available to make the determination." *Armstrong v. Commissioner of Soc. Sec. Admin*, 160 F.3d 587, 590 (9th Cir. 1998) (citation omitted.) Here, the record shows that Plaintiff has been diagnosed with anxiety, depression, as well as PTSD and continues to be treated for the conditions but the ALJ does not provide any specific reasoning for excluding those treatment records for Plaintiff's mental health impairments. *See Grube v. Comm. of Soc. Sec. Admin*, No. 17-cv-4263-PHX-JZB, 2019 WL 917222, at *3 (D. Ariz. Feb. 25, 2019) (It was plain error for the ALJ to exclude all treatment records for dates after the date last insured.)

In summary, the Court finds that the ALJ erred at step two by finding Plaintiff's mental impairments not severe without substantial evidence, and by failing to consider Plaintiff's treating physician's records without clear and convincing reasons for doing so. The Court cannot conclude that the ALJ's error was harmless. Failing to consider the totality of Plaintiff's medical records, including his more recent records from a treating psychiatrist was central to the ALJ's finding that Plaintiff's mental impairments were non-severe. Moreover, Plaintiff's RFC included no limitations relating to his mental impairments. Therefore, because the Court cannot determine that the ALJ's errors are "inconsequential to the ultimate disability determination," the errors cannot be deemed harmless." *See Carmickle*, 466 F.3d at 885.

///

///

**F.      Remedy**

Plaintiff requests that the Court that the Court remand for additional proceedings. (Jot. Mot. at 43.) The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler*, 775 F.3d at 1099. "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981*); see also Garrison*, 759 F.3d at 1019 (noting that a Social Security case should usually be remanded to remedy defects in the administrative proceeding).

The evidence in this case does not conclusively establish that Plaintiff is disabled under the Social Security disability regulations. Rather the evidence must still be weighed and evaluated properly. Additional proceedings can remedy the defects in the ALJ's decision. Accordingly, remand for additional proceedings is appropriate.

<b>CONCLUSION AND RECOMMENDATION</b>

For the reasons stated above, the Court recommends that the final decision of the Commissioner be **REVERSED**, and the case **REMANDED** for further proceedings.

This Report and Recommendation will be submitted to the Honorable William Q. Hayes, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **July 9, 2024**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **July 16, 2024**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  June 24, 2024

_____
Hon. D. Thomas Ferraro
United States Magistrate Judge